STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 08-1106


RODNEY R. DUHON, SR.

VERSUS

THE LAKE CHARLES ELECTRICAL JOINT APPRENTICE, ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-4871
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and James T. Genovese, Judges.

AFFIRMED.

Edward J. Fonti
Jones, Tete, Fonti, & Belfour, L.L.P.
P. O. Box 1930
Lake Charles, LA 70602-1930
(337) 439-8315
Counsel for Plaintiff/Appellant:
Rodney R. Duhon, Sr.

**Louis L. Robein, Jr.**
**Robein, Urann, Spencer, Picard & Cangemi**
**2540 Severn Avenue, Suite 400**
**Metairie, LA 70002-5955**
**(504) 885-9994**
**Counsel for Defendant/Appellee:**
**The Lake Charles Electrical Joint Apprentice & Training Committee**

**Kenneth Michael Wright**
**203 West Clarence Street**
**Lake Charles, LA 70601**
**(337) 439-6930**
**Counsel for Defendant/Appellee:**
**The Lake Charles Electrical Joint Apprentice & Training Committee**

**EZELL, JUDGE.**

Rodney Duhon appeals the trial court's granting of a summary judgment in favor of the Lake Charles Joint Apprenticeship and Training Committee (the JATC). For the following reasons, we affirm the decision of the trial court.

The JATC operates a training program in which apprentice electricians receive a combination of on-the-job training and classroom instruction in electrical work. The program is a joint venture between the National Electrical Contractor Association (contractors) and the International Brotherhood of Electrical Workers (IBEW). The National JATC (the NJATC) sets the standards to which the local programs are to comply. Under those standards, an apprentice is to complete five years and 8,000 hours of training to be certified as a journeyman electrician.

The JATC is governed by a joint committee of three contractors and three members of the IBEW. Prior to his termination, Mr. Duhon served under the JATC board as Apprenticeship Coordinator and Director. He was responsible for the day-to-day business of the training program.

On June 7, 2006, the JATC met and voted four to two to terminate Mr. Duhon's employment contract. Mr. Duhon sued, claiming he was terminated without cause, in violation of the terms of his employment contract. The JATC filed a motion for summary judgment, claiming there were no genuine issues of material fact and that Mr. Duhon had been fired for just cause. The motion for summary judgment was granted by the trial court, dismissing Mr. Duhon's claims. From that decision, Mr. Duhon appeals.

Mr. Duhon asserts one assignment of error on appeal, that the trial court erred in ruling that cause existed for his termination.

1

When an appellate court reviews a trial court judgment on a motion for summary judgment, it applies the *de novo* standard of review "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p.4 (La. 5/22/07), 958 So.2d 634, 638. The motion should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

In reviewing this judgment, we must apply the burden of proof imposed upon a movant in a motion for summary judgment, which is set forth as follows in La.Code Civ.P. art. 966(C)(2):

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Mr. Duhon's contract stated that disciplinary action taken against him would be subject to a "just cause" standard. "The Louisiana Civil Code explains that 'cause' is synonymous with 'reason.'" *Voitier v. Church Point Wholesale Beverage Co., Inc.*, 99-1777, p. 9 (La.App. 3 Cir. 4/5/00), 760 So.2d 451, 458, *writ denied*, 00-1920 (La. 9/29/00), 770 So.2d 350 (citing La.Civ.Code art. 1967 cmt. (a)). *Black's Law Dictionary* (8th ed. 2004), defines just or good cause as "[a] legally sufficient reason." Therefore, it is our task to determine if there is no genuine issue of material

fact that Mr. Duhon was fired for a legally sufficient reason.

The JATC provided Mr. Duhon a list of ten reasons for his termination, including failure to attend JATC meetings or training seminars, neglect of duties, failure to maintain proper business hours in his office, improperly awarding hours to apprentices, and failing to implement changes mandated by the NJATC.

Mr. Duhon's main argument is that the trial court relied on the JATC's claim that he was not running a program in line with that mandated by the NJATC while they were the ones who ordered him to go from a five-year to a four-year program. However, we find this argument unconvincing.

While it is true that the JATC board did order the change, the record clearly shows that Mr. Duhon certified false apprentice records to the Louisiana Department of Labor, the NJATC, and the IBEW. These falsifications concerned the number of years apprentices attended the program and the number of hours they worked. Gail Miller, Mr. Duhon's former secretary, stated in her affidavit that Mr. Duhon would have her wait one year after the completion of the four-year program to submit diplomas, so that it would indicate to the Louisiana Department of Labor and the NJATC that the apprentices had completed a five-year program. Her affidavit gave several specific examples of instances of manipulation of hours to benefit specific apprentices even beyond the lying about their having reached the required 8,000 hours needed for journeyman status. This fact is uncontradicted, as Mr. Duhon admits falsifying these documents.

Despite his arguments in brief to the contrary, there is no evidence in the record whatsoever that shows that the board was aware of this behavior. Even if his argument concerning the reduction in the number of years of schooling had merit, nowhere does Mr. Duhon even argue that the board ordered him to change the

3

number of hours required for certification as a journeyman. Thus, there is no genuine issue as to the fact that Mr. Duhon inappropriately certified false information concerning apprentice schooling and hours.

Mr. Duhon attempts to argue that this information was discovered after the firing and could not retroactively constitute just cause under *Voitier*. We find that argument also to be lacking. Most notably, he refers to the specific example of hour manipulation contained in Gail Miller's affidavit. However, the fact that specific examples were given after the fact in Mrs. Miller's affidavit certainly does not mean that they were not known prior to the termination. Mrs. Miller clearly knew she was filling out false documents at the time he told her to prepare them. Jeff Sanders stated that while he was assistant business manager to the IBEW, prior to the termination, he knew of one apprentice who miraculously rose from a one-year helper to a four-year (at best) journeyman a scant one year later. Although he stated that he could not name one specific person off the top of his head during his deposition, Tink Reeves stated that he knew of instances where Mr. Duhon had manipulated hours for an apprentice. Further, the record contains uncontradicted testimony that the practice was generally known throughout the IBEW. It is clear that Mr. Duhon's behavior was well known prior to his termination. This argument is without merit.

Additionally, the record is also clear that Mr. Duhon did fail to attend the JATC seminars and training courses and that his office hours were unusual, to be generous. It is clear from the record that the JATC had ample just cause to terminate Mr. Duhon's contract and that there is no genuine issue of material fact pertaining to that matter.

Finally, the JATC answers Mr. Duhon's appeal, seeking attorney fees for work done on appeal and claiming that the appeal is frivolous and brought solely for the

4

purpose of delay. We find no frivolity in the appeal and, therefore, deny the JATC's answer to it.

For the above reasons, the decision of the trial court is hereby affirmed. Costs of this appeal are assessed against Mr. Duhon.

**AFFIRMED.**